In the Matter of Charles E. Sigety, Doing Business as Florence Nightingale Nursing Home, Appellant, *v.* Hollis S. Ingraham, as Commissioner of Health, et al., Respondents.

First Department, June 16, 1970.

*William Klein, II,* of counsel (*Julius J. Rosen* and *Joel I. Genzer* with him on the brief; *Austrian, Lance & Stewart,* attorneys), for appellant.

*Philip Weinberg* of counsel (*Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondents.

*Per Curiam.* The petitioner appeals from a judgment dismissing an article 78 proceeding brought to review the determination of the State Commissioner of Health approving and certifying the Medicaid reimbursement rates allowable to the petitioner for nursing home services rendered to patients during the period from July 1, 1968, to December 31, 1969.

The statute (Public Health Law, § 2807, subd. 3; L. 1965, ch. 795, § 1, as amd. by L. 1968, ch. 862, § 8, eff. Sept. 1, 1968) controlling the action of the Commissioner, provided that he should " determine and certify " rate schedules for payments for hospital and health related service, including nursing home service, as " are reasonably related to the costs of providing such service," and " in making such certification, the commissioner shall specify the elements of cost taken into consideration." Furthermore, rules promulgated by the Commissioner (repealed as of Jan. 13, 1970) under the authority of section 2803 of the Public Health Law provided that " nursing home and health related facility rates shall be *individually determined,* be related to the reasonable cost of providing services to patients or residents, be established on an all-inclusive bases, be computed as an average monthly cost of providing inpatient or resident care, and be no greater than the rate established by a nursing home or health related facility for private patients or residents." (10 NYCRR 770.2 [b]; emphasis added.) Said rule, in subdivisions (c) and (d), then specified the elements of cost and the items of expense to be taken into consideration by the Commissioner in the rate computation. However, the Commissioner concededly failed to follow this statutory directive and the then general regulatory guidelines prescribed for establishing the rates properly chargeable by petitioner. Instead, the Commissioner followed a further provision of his then rules which arbitrarily fixed nursing home rates through June 30, 1969, so as not to exceed " 50 percent of the weighted average adjusted inpatient or resident day cost " charged by the proprietary hospitals in the State. (10 NYCRR 770.2[h].)

Where, as here, it appears that a nursing home's reasonable costs in providing services substantially exceeded the arbitrary norm of 50% of the average daily rate charged by proprietary hospitals, we conclude that the Commissioner, to comply with the statutory directive and his promulgated general guidelines, was bound to take the appropriate steps to determine and certify

a rate to cover such reasonable costs. The action of the respondent, in failing to comply with the statutory directive, amounted to the assumption of powers in excess of those conferred upon it by law. Consequently, the administrative action may not stand. (See *Matter of Barry* v. *O'Connell*, 303 N. Y. 46, 53.) The court, however, may not, on the basis of the record, assume the power to determine the proper rates and the matter should be remanded for this purpose.

The petitioner's right to the establishment of proper rates for the period from July 1 to December 31, 1969 may not be defeated by the application of the 1969 amendment to subdivision 2 of section 2807 of the Public Health Law providing that rates of payment in effect on March 31, 1969, or approved after such date, shall continue in effect for the remainder of the year. Such amendment is properly limited in its application to such rates as have been lawfully determined and certified in the first instance and may not be lawfully applied to validate or "freeze" rates which have not been so established. (*Catholic Med. Center of Brooklyn & Queens* v. *Rockefeller*, 305 F. Supp. 1256; 305 F. Supp. 1268.)

Finally, we see no merit in respondents' claim that petitioner's right to the relief sought, or to a part thereof, has been barred by the four-month Statute of Limitations. That defense was not pleaded in respondents' answer and, furthermore, the matter of determining the rates for the entire period remained fully subject to continuous administrative consideration until final action within four months of the commencement of this proceeding.

The judgment dismissing the article 78 proceeding should be reversed on the law with costs and disbursements to petitioner-appellant and the matter remanded to the State Commissioner of Health to re-establish in light of this opinion the nursing home rates chargeable by petitioner from July 1, 1968, to December 31, 1969.

McNALLY, J. (dissenting). I dissent and vote to affirm.

This appeal involves determinations of the respondents fixing reimbursement rates for nursing home services rendered by petitioner, a proprietary nursing home, and being paid by the State of New York. Petitioner appeals from the dismissal of its petition.

The proceeding was commenced June 26, 1969. The rates pertain to the period December 12, 1967 through June 30, 1969.

Petitioner opened its facility on December 12, 1967. On January 8, 1968 respondents fixed the effective daily rate per

patient at $21 for the period December 7, 1967 (December 12, 1967 in the case of petitioner) through June 30, 1968. On July 25, 1968 respondents established rates for nursing homes, including petitioner, for the period July 1, 1968 to June 30, 1969. In the case of the petitioner, the daily rate was $21. On September 30, 1968 respondents redetermined and increased petitioner's daily rate to $24 for the period October 1, 1968 to June 30, 1969. On April 25, 1969 respondents redetermined and increased petitioner's rate to $29 for the period April 1, 1969 to June 30, 1969.

Responsibility for the development and administration of the State's policy pertaining to hospital and related services is vested in the Department of Health. (Public Health Law, § 2800.) Nursing homes are within the ambit of hospitals. (Public Health Law, § 2801, subd. 1.) Payment for such services made by New York State is required to be at rates approved by the Budget Director.

Subdivision 2 of section 2807 also provides: "Rates approved by the state director of the budget for the first time after March thirty-first, nineteen hundred sixty-nine shall continue in effect for the period ending December thirty-first, nineteen hundred sixty-nine."

Prior to approval by the Budget Director, the Commissioner of Health was required to certify to him for the period prior to May 26, 1969 that the rates " are reasonably related to the costs of providing such service " and thereafter to certify that the rates " are reasonably related to the costs of efficient production of such service ". (Public Health Law, § 2807, subd. 3.)

The State Hospital Review and Planning Council (Council) with the approval of the Commissioner may adopt regulations to effectuate schedules of rates (Public Health Law, § 2803, subd. 2). The regulations pertaining to nursing homes effective during the period here involved provided: " rates shall be individually determined, be related to the reasonable cost of providing services to patients or residents, be established on an all-inclusive basis, be computed as an average monthly cost of providing inpatient or resident care, and be no greater than the rate established by a nursing home or health related facility for private patients or residents." (10 NYCRR 770.2[b].)

Various criteria and elements are required to be included in the rate computations. Subdivision (h) of said regulation provides: " For the period through June 30, 1969, the per patient or per resident day cost of care rate, excluding public home infirmaries and public health related facilities, shall not exceed 50 percent of the weighted average adjusted inpatient or resi-

dent day cost of care rate of appropriate hospitals, as follows:
* * *

" (2) all proprietary hospitals in the State for proprietary nursing homes and health related facilities ".

Subdivision (m) of section 770.2 of the regulations enables a request for modification of a certified rate in accordance with section 770.5 based on economic status resulting from expansion of patient or resident services or otherwise justified. Section 770.5 sets forth the data required in support of the application for modification of a certified rate.

Special Term held the proceeding was time-barred as to the rates fixed on January 8, 1968 and September 30, 1968, since this proceeding was instituted June 26, 1969, and was required to be commenced within four months after the said determinations became final and binding upon the petitioner (CPLR 217). That the said determinations, as well as that of July 25, 1968, became final and binding upon the petitioner is beyond doubt since the payments thereon based were made to and accepted by the petitioner. Petitioner contends, however, the time limitation as to the determinations antedating that of April 25, 1969 has been waived by respondents' failure to plead the time limitation as a bar or to move for dismissal on said ground. Respondents, as statutory officials representing the people of the State, may not waive the requirement of timely application to review the said determination. (*People ex rel. Amer. Contr. & Dredging Co.* v. *Wemple*, 60 Hun 225, 230–231, affd. 129 N. Y. 558.) Special Term, therefore, properly held the proceeding untimely as to the determinations of January 8, 1968 and September 30, 1968. The proceeding is also time-barred as to the determination of July 25, 1968, more than four months prior to June 26, 1969, when this proceeding was instituted.

The various protests relied on by petitioner do not affect the finality and binding effect of the said determinations, and did not serve to toll the four-month limitation. (*Matter of Nelson* v. *Kelly*, 4 A D 2d 596; *Matter of Williamson* v. *Fermoile*, 31 A D 2d 438.)

Petitioner was entitled to apply for an increased rate on a showing of a change of economic status. (10 NYCRR 770.5; *Matter of Perpente* v. *Moss*, 293 N. Y. 325.) The record establishes such applications and the determinations of September 30, 1968 and April 25, 1969 are responsive thereto. Nevertheless, the four-month limitation became applicable as to each determination because each involved different facts and periods of time. (Cf. *Matter of Davis* v. *Kingsbury*, 30 A D 2d 944.)

The determination of April 25, 1969 for the period April 1, to June 30, 1969 properly fixed the daily rate per patient at $29, which was one half of the average daily rate for proprietary hospitals throughout the State. Underlying said determination is subdivision (h) of section 770.2 of the regulations which establishes a ceiling of 50% of the average day cost of all proprietary hospitals in the State as to proprietary nursing homes.

The Public Health Law (§ 2807) establishes broad standards for rate determinations. They are to be " reasonably related to the costs of providing such service ". Consideration is to be given to costs as affected by location and local economic factors and costs of comparable hospitals and " the need for incentives to improve service and institute economies ". There is nothing in the statute which requires payment based solely on the individual costs of each nursing home.

Subdivision (b) of section 770.2 of the regulations does provide for the individual determination of rates for nursing homes on the basis of the " reasonable cost of providing services to patients." However, said regulation does not render petitioner's costs conclusive, although a relevant factor. Said regulation also provides for the period April 1 to June 30, 1969 that the ceiling for the rates of nursing homes is to be no more than 50% of the average daily cost of care of a patient of a proprietary hospital (§ 770.2, subd. [h]). It was within the competence of the Council and the commission to establish a maximum rate for patients of proprietary nursing homes based on 50% of the rate for patients of proprietary hospitals. (*Matter of Old Republic Ins. Co.* v. *Wikler,* 9 N Y 2d 524.)

The Commissioner's affidavit alleges the experience of his department establishes that the expenses of efficiently operated proprietary nursing homes throughout the State are " below half the weighted average of rates charged by proprietary hospitals in this State ". Appellant does not factually allege nor does he contend otherwise. The said regulatory ceiling was certified at $29.01, half of the weighted average rate per day of proprietary hospitals established at $58.02, for the period April 1 to June 30, 1969. Moreover, appellant may not collaterally challenge the said regulation and the ceiling rate established thereunder. (*Matter of Golden* v. *Joseph,* 307 N. Y. 62, 68; *Matter of Corrigan* v. *Joseph,* 304 N. Y. 172, 186, footnote; *Matter of Sullivan* v. *Williams,* 303 N. Y. 871; *Matter of Beckmann* v. *Talbot,* 278 N. Y. 146, 149, 150; *Ament* v. *Cohen,* 16 A D 2d 824; *Matter of Don* v. *Joseph,* 286 App. Div. 236, 238.)

The order dismissing the petition should be affirmed.

EAGER, J. P., MARKEWICH and STEUER, JJ., concur in *Per Curiam* opinion; MCNALLY, J., dissents in opinion.

Judgment reversed on the law, with $50 costs and disbursements to petitioner-appellant, and the matter remanded to the State Commissioner of Health to re-establish in light of this court's opinion the nursing home rates chargeable by petitioner from July 1, 1968 to December 31, 1969.