Edelman v New York State Dept. of Taxation & Fin. (2018 NY Slip Op 04672)





Edelman v New York State Dept. of Taxation & Fin.


2018 NY Slip Op 04672


Decided on June 26, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 26, 2018

Renwick, J.P., Gische, Kapnick, Gesmer, Kern, JJ.


156415/16 6970

[*1]6971 Samuel Edelman, et al., Plaintiffs-Appellants,
v
New York State Department of Taxation and Finance, et al., Defendants-Respondents.


Hodgson Russ LLP, Buffalo (Timothy P. Noonan of counsel), for appellants.
Eric T. Schneiderman, Attorney General, Albany (Kate H. Nepveu of counsel), for respondents.



Orders, Supreme Court, New York County (Manuel J. Mendez, J.), entered June 13, 2017, which granted defendants' motion to dismiss the complaint for failure to state a cause of action, and denied plaintiffs' motion to convert defendants' motion into a motion for summary judgment pursuant to CPLR 3211(c), unanimously affirmed, without costs.
This appeal turns on whether Matter of Tamagni v Tax Appeals Trib. of State of N.Y. (91 NY2d 530 [1998], cert denied 525 US 931 [1998]), in which plaintiffs' present arguments were rejected by the Court of Appeals, was abrogated by the decision of the U.S. Supreme Court in Comptroller of the Treasury of Maryland v Wynne (___ US ___, 135 S Ct 1787 [2015]). We conclude that Tamagni was not abrogated by Wynne and therefore that the instant complaint was correctly dismissed for failure to state a cause of action.
Plaintiffs' argument is that New York's tax scheme violates the dormant Commerce Clause by unfairly permitting double taxation of their intangible income by both New York, where they were "statutory residents," and Connecticut, where they were domiciled (see 20 NYCRR 120.4[d]). Plaintiffs contend that this taxation burdens interstate commerce, particularly by inhibiting their free movement into New York State to work and their ability to buy or lease a home in New York due to the risk of being deemed a resident and subject to double taxation of intangible income. Further, they maintain that New York's tax scheme fails the "internal consistency" test, which requires fair apportionment of income between states and nondiscrimination against interstate commerce (see generally Complete Auto Tr., Inc. v Brady, 430 US 274, 279 [1977]; Matter of Zelinsky v Tax Appeals Trib. of State of N.Y., 1 NY3d 85, 90 [2003], cert denied 541 US 1009 [2004]).
Contrary to plaintiffs' argument, Wynne is distinguishable from Tamagni, and from the instant case, in two critical respects. First, it did not involve individuals who faced double taxation on intangible investment income by virtue of being domiciliaries of one state and statutory residents of another. Second, the income subject to tax in Wynne was not intangible investment income, but business income, traceable to an out-of-state source. Notably, New York tax law does not permit double taxation of such out-of-state income, but provides for a credit for taxes paid to the other state.
Plaintiffs contend that, unlike Tamagni, Wynne makes clear that a tax scheme is not immune from Commerce Clause scrutiny simply because it is "residency-based," i.e., imposed on taxpayers by virtue of their status as New York statutory residents. Indeed, the Supreme Court said that the state's "raw power to tax its residents' out-of-state income does not insulate its tax scheme from scrutiny under the dormant Commerce Clause" (Wynne, 135 S Ct at 1799 [emphasis added]). However, the income at issue in Tamagni (and in the instant case) was not "out-of-state income" but intangible investment income, which "has no identifiable situs," "cannot be traced to any jurisdiction outside New York," and is "subject to taxation by New [*2]York as the State of residence" (Tamagni, 91 NY2d at 536). Further, while Tamagni referred to the "inapplicability of dormant Commerce Clause analysis to State resident income taxation" (91 NY2d at 544), which is inconsistent with Wynne, it did so only after recognizing that the statute "dictate[s] some level of dormant Commerce Clause scrutiny" (id. at 538-539) and engaging in a thorough analysis that concluded that the taxation scheme did not violate the dormant Commerce Clause.
Nor does Wynne, by establishing that the "internal consistency" test must be applied wherever there is Commerce Clause scrutiny, abrogate Tamagni's "core holding" that, even if Commerce Clause scrutiny was necessary, there was no reason to apply the test. Where Commerce Clause scrutiny reveals that the statute at issue does not affect interstate commerce, there is no need for a test determining whether the statute unduly burdens interstate commerce.
The motion court correctly denied plaintiffs' motion pursuant to CPLR 3211(c). In the context of defendants' motion pursuant to CPLR 3211(a)(7), the court's focus was on whether plaintiffs had stated a claim for declaratory relief under the Commerce Clause, not on whether they could prevail on such a claim (see Law Research Serv. v Honeywell, Inc., 31 AD2d 900 [1st Dept 1969]).
We have considered plaintiffs' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 26, 2018
CLERK